UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| COREY OLOMON, individually and on behalf of others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>JACKERY INC.,<br><br>Defendant. | CASE NO. 2:26-cv-02330-TL<br><br>ORDER REMANDING CASE |

This matter is before the Court *sua sponte*. Having reviewed the record, and finding oral argument unnecessary, LCR 7(b)(4), the Court finds that it lacks subject-matter jurisdiction over this action. Therefore, pursuant to 28 U.S.C. § 1446(c), the Court REMANDS the case to King County Superior Court. *See D'Lil v. Best Western Encina Lodge & Suites*, 538 F.3d 1031, 1035 (9th Cir. 2008) ("Federal courts are *required* sua sponte to examine jurisdictional issues such as standing." (quoting *Bernhardt v. County of Los Angeles*, 279 F.3d 862, 868 (9th Cir. 2001))).

## I. BACKGROUND

### A. Commercial Electronic Mail Act and Consumer Protection Act

Washington's Commercial Electronic Mail Act ("CEMA"), Chapter 19.190 RCW, "prohibits sending Washington residents commercial e-mails that contain any false or misleading information in the subject lines of such e-mails." *Brown v. Old Navy, LLC*, 4 Wn.3d 580, 596, 567 P.3d 38 (2025) (emphasis removed). "A violation of CEMA's e-mail regulations is a per se violation of the Consumer Protection Act (CPA)." *Id.* at 584. In this case, Plaintiffs allege that they are the recipients of emails from Defendant Jackery, Inc., that, among other things, "contain[] false and misleading subject lines" that are "intend[ed] to deceive consumers into believing that [Defendant's] discounts are limited time and into believing that customers are getting a substantial discount of Defendant's regular and former prices." Dkt. No. 1-2 (state-court complaint) ¶¶ 36, 47.

### B. Procedural Background

On May 28, 2026, Plaintiffs filed this purported class action in King County Superior Court, alleging violations of CEMA and the CPA. *See generally* Dkt. No. 1-2. On July 2, 2026, Defendant removed the action to federal court, alleging this Court's subject-matter jurisdiction under the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d). *See* Dkt. No. 1 at 2 (notice of removal).

On July 9, 2026, the Court ordered Defendant to show cause as to why this case should not be remanded to Superior Court. Dkt. No. 8. On July 23, 2026, Defendant responded to the show-cause order (Dkt. No. 13), and Plaintiffs responded on July 30, 2026 (Dkt. No. 14).

## II. LEGAL STANDARD

### A. Mandatory Remand

28 U.S.C. § 1447(c) provides, in part, that "[i]f at any time before final judgment it

appears that the district court lacks subject matter jurisdiction, the case shall be remanded." The statute is imperative: "Section 1447(c) is mandatory, not discretionary." *Bruns v. Nat'l Credit Union Admin.*, 122 F.3d 1251, 1257 (9th Cir. 1997).

**B. Standing**

Federal courts are constrained by the case-and-controversy requirement of Article III, which limits the jurisdiction of federal courts to cases where plaintiffs have established standing. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). "Standing" exists where a plaintiff is entitled to bring their claims before the court and is an essential ingredient of determining a court's jurisdiction. *See Perry v. Newsom*, 18 F.4th 622, 630–31 (9th Cir. 2021). In order to have standing to bring a lawsuit, a plaintiff must demonstrate an injury that is (1) "concrete, particularized, and actual or imminent" (an "injury-in-fact"), (2) "fairly traceable to the challenged action," and (3) "redressable by a favorable ruling." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan*, 504 U.S. at 561.

## III. Discussion

"Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins (Spokeo II)*, 578 U.S. 330, 341 (2016). This means that "a plaintiff does not 'automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue to vindicate that right.'" *Robins v. Spokeo, Inc. (Spokeo III)*, 867 F.3d 1108, 1112 (9th Cir. 2017) (quoting *Spokeo II*, 578 U.S. at 341); *see Stutsman v. Sirius XM Radio LLC*, No. C25-1113, 2026 WL 2445129, at *2 (W.D. Wash. Aug. 20, 2026) ("[T]he legislature's creation of a statutory prohibition or obligation and a cause of action 'does not relieve courts of their responsibility to independently

decide whether a plaintiff has suffered a concrete harm under Article III[.]'" (quoting *TransUnion LLC v. Ramirez*, 594 U.S. 413, 426 (2021))).

Here, Plaintiffs allege two types of misconduct. First, Defendant sends emails containing deceptive subject lines. One version of the deception "convey[s] that the advertised discounts are limited duration and/or will end imminently (e.g., 'Ends Tonight,' 'One Day to Go,' or '24 Hours Lass [*sic*] Call')." Dkt. No. 1-2 ¶ 16. But "[i]nstead, [Defendant] regularly extends the sales after the false deadline has expired, or—within days—replaces the sale that ends with a materially similar (or even better) sale." *Id.* A second version "specif[ies] a percentage off or dollar off discount (e.g., 'Up to $3,300 OFF' or 'Up to 65% Off') that consumers can obtain by buying during the supposedly time-limited sale." *Id.* ¶ 17. "But in truth," Plaintiffs allege, "Defendant offers substantial discounts so frequently that the list prices Defendant advertises are not the prices at which the Products usually retail." *Id.* Finally, Defendant's emails "clog up inboxes, waste limited data space, and violate Plaintiff's and putative Class members' statutory right to be free from deceptive commercial emails." *Id.* ¶ 39.

But misconduct is one thing; injury caused by that misconduct is quite another. Here, the pleading appears to allege two harms—(1) a violation of Plaintiffs' "statutory right not to receive commercial emails that contain false or misleading subject lines"; and (2) Plaintiffs' actual receipt of the emails which, as mentioned above, has led to clogged inboxes and wasted data space. *Id.* (citing RCW 19.190.030(3)). Neither is sufficient to establish Article III standing.

As to the statutory violation, in *Stutsman*, the court remanded a similar case to state court, "follow[ing] an ever-growing list of decisions finding that the mere receipt of alleged misleading or false marketing email subject lines, absent any allegation of economic loss, detrimental reliance, or any comparable injury, does not constitute a concrete harm sufficient to establish Article III injury." *Stutsman*, 2026 WL 2445129, at *4 (collecting cases). Similarly here, the

pleading lacks any allegations of economic loss or detrimental reliance. Nor does it include any indication, beyond the oblique reference to clogged inboxes, that the allegedly offending emails were particularly unwelcome. In *Huong v. Beis LLC*, another CEMA case in this District, the plaintiff's pleading described plaintiff's "momentary panic upon reading the subject line of an email," because plaintiff thought "her identity had been stolen[.]" No. C26-2207, 2026 WL 2620511, at *2–3 (W.D. Wash. Sept. 4, 2026). This, at the very least, demonstrated some unpleasantness, however fleeting, associated with receipt of the emails at issue.[1] Here, however, nothing of the sort has been alleged. As pleaded, then, the statutory violation is not sufficient to demonstrate Article III injury.

As to the clogged inboxes, Defendant re-frames the offending behavior as "unwanted communications" and categorizes the harm as "bear[ing] a close relationship to intrusion upon seclusion," one of the traditional invasion-of-privacy torts. Dkt. No. 13 at 5 (quoting *Six v. IQ Data Int'l, Inc.*, 129 F.4th 630, 634 (9th Cir. 2025)). But there are two problems with this argument.

First, notwithstanding the negative connotations of the word "clog," Plaintiffs do not actually allege how the flow of Defendant's emails into their inbox was an intrusion upon seclusion or invasion of privacy. For one thing, the only Party here who definitively describes the emails as "unwanted" is Defendant. This misreads the complaint, which is directed toward allegedly *deceptive* emails and suggests that the "intrusion" would actually be welcome if the subject lines that constituted its vanguard were truthful. *See* Dkt. No. 1-2 ¶ 41 ("Consumers care about receiving discounts.").

---

[1] Even so, the court concluded that Huong's panicked reaction was "insufficient to constitute an injury in fact that satisfies Article III." *Huong*, 2026 WL 2620511, at *3.

Moreover, in Washington, "[i]nvasion of privacy by intrusion consists of a deliberate intrusion, physical or otherwise, into a person's solitude, seclusion, or private affairs. The intruder must have acted deliberately to achieve the result, with the certain belief that the result would happen." *Fisher v. State ex rel. Dep't of Health*, 125 Wn. App. 869, 879, 106 P.3d 836 (2005) (citing *Est. of Jordan v. Hartford Accident & Indem. Co.*, 120 Wn.2d 490, 505–506, 844 P.2d 403 (1993)). Crucially, "[i]ntent is . . . an essential element." *Id.* Construing the claims in Plaintiffs' pleading broadly, the Court cannot reasonably map the facts that have been alleged onto the state-law framework for this particular tort. Nor can the Court reasonably conclude from the face of the pleading that Plaintiffs have taken offense to the Defendant's purported intrusion. Indeed, the fairest reading of the complaint clearly indicates that Plaintiffs' gripe is with the *content* of Defendant's emails. Tellingly, they make no allegation that they did not consent to the transmission of the emails, and they do not claim that their "solitude, seclusion, or private affairs" have been intruded upon. As the "plaintiff is the master of [their] complaint and responsible for articulating cognizable claims," it is not—at this procedural posture—within Defendant's purview to explain to Plaintiffs what harm *really* befell them. *Newtok Village v. Patrick*, 21 F.4th 608, 616 (9th Cir. 2021).

Second, and relatedly, courts in this District have found that intrusion upon seclusion is not relevant within a CEMA context, because the tort "depends on contact the plaintiff did not want." *Talley v. Rare Beauty LLC*, No. C25-2749, 2026 WL 3216897, at *2 (W.D. Wash. Oct. 27, 2026); *see, e.g.*, *Stephens v. Butcherbox OpCo LLC*, No. C26-5482, 2026 WL 3034240, at *3 (W.D. Wash. Oct. 9, 2026) ("The receipt of emails, without more, is not sufficiently connected to traditional injuries like nuisance, fraud, or intrusion upon seclusion, which involve nonconsensual conduct or reliance."); *O'Callaghan Lewis v. Earnest LLC*, No. C26-2415, 2026 WL 3093295, at *3 (W.D. Wash. Oct. 16, 2026) ("[C]ourts have not found an injury similar to

intrusion upon seclusion where plaintiffs ostensibly consented to receiving marketing emails from the defendant.”). Here, Plaintiffs do not allege that the allegedly offending emails disrupted their privacy, and they do not allege that the emails were unsolicited. In sum, Plaintiffs have not established an injury-in-fact that is sufficiently concrete to confer Article III standing.

## IV. CONCLUSION

Accordingly, it is hereby ORDERED that this case be REMANDED to King County Superior Court.

Dated this 30th day of October 2026.

Tana Lin
United States District Judge